```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/11/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
RODNEY E. HOLMAN,                                   :
                                                    :
                              Plaintiff,            :    12 Civ. 5817 (JMF)
                                                    :
             -v-                                    :    OPINION AND ORDER
                                                    :
CAROLYN W. COLVIN,                                  :
   Acting Commissioner of Social Security,          :
                                                    :
                              Defendant.[1]        :
                                                    :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Rodney E. Holman brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security (the "Commissioner") finding him ineligible for Social Security Disability Insurance ("SSDI") benefits. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties cross-move for judgment on the pleadings. (Docket Nos. 10, 13). For the reasons stated below, the Commissioner's motion is GRANTED, and Holman's motion is DENIED.

## BACKGROUND

The following background is derived from the parties' pleadings and the administrative record. (Transcript of the Administrative Record ("Tr.") (Docket No. 7)). This is the latest chapter in a long dispute between Holman and the Commissioner. Plaintiff suffered an injury to his lower back while moving heavy boxes during his employment as a school custodian in June

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as Defendant. The Clerk of Court is directed to modify the caption accordingly.

2001 and, since then, has not worked. (Tr. 1177). He has regularly visited several physicians to manage the injury and related conditions. (Mem. Law Supp. Comm'r's Mot. J. Plead. ("Def.'s Mem. Law") (Docket No. 14) 4-13).

Plaintiff first applied for SSDI benefits in January 2002. (Tr. 45). Following a hearing in March 2004, an ALJ denied Holman's application. (*Id.* at 42-51). Plaintiff subsequently pursued an administrative appeal, but the Agency's Appeals Council declined to consider his request in June 2004. (*Id.* at 36-38). Plaintiff filed a new SSDI application on December 7, 2004, and again requested a hearing after the Commissioner denied his request. That second hearing was held on March 28, 2006, and three days later, on March 31, 2006, an ALJ again ruled that Holman was not disabled. (*Id.* at 740-51). Relying on the varied opinions of Plaintiff's doctors from 2001 to 2006, the ALJ concluded that the evidence confirmed Holman's injury, but that he was not disabled to the degree that he alleged. (*Id.* at 745-50). The Appeals Council declined to consider his request for review in May 2006. (*Id.* at 28).

The present appeal concerns Plaintiff's third application for SSDI benefits, initially filed in August 2006 and claiming an initial date of disability of April 1, 2006, one day after the previous proceedings had concluded. (*Id.* at 18). ALJ Katherine Edgell conducted a hearing by videoconference on November 9, 2007. (*Id.* at 15-27). In her opinion of November 28, 2007, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to "perform the full range of sedentary work" because she found that he could continue to lift up to ten pounds, stand or walk for up to two hours each day, and sit for up to six hours each day. (*Id.* at 24, 27). That finding relied primarily on the opinions of Dr. Steven Rocker — who, after a consultative examination in September 2006, concluded that Plaintiff had a "[m]oderate limitation for lifting and carrying" (*id.* at 24, 906-09) — and Dr. Michael Miller — who, after

completing an independent orthopedic examination in October 2007, concluded that Plaintiff was "capable of working in a full time capacity [with a] lifting restriction." (*Id.* at 994-96). The ALJ accorded less weight to the opinion of Dr. Prem Gupta, one of Plaintiff's principal treating physicians. In a medical-source statement from August 2007 that Dr. Gupta completed at the ALJ's request, he indicated that Plaintiff could stand and walk for no more than two hours daily, sit for no more than four hours daily, and required the use of a cane to ambulate. (*Id.* at 968). In the course of denying Holman's claim, the ALJ stated that Dr. Gupta's opinion was "[un]supported by objective medical evidence." (*Id.* at 26).

The Appeals Council denied Plaintiff's request for review of the ruling on June 16, 2009 (*id.* at 10-13), and Plaintiff filed a civil action in this court. (*Id.* at 1075a-c). Prior to a hearing, the Commissioner and Plaintiff stipulated and agreed to remand the case for further administrative proceedings, and the Honorable Deborah A. Batts, to whom the earlier case was assigned, issued an order to that effect. (*Id.*). The Appeals Council further remanded the case with directions, noting several errors in the ALJ's decision. (*Id.* at 1078-82). Most important, the ALJ had accorded greater weight to the "vague assessments by consultative physicians" (Drs. Rocker and Miller) than to the "specific assessments of the claimants [sic] treating physicians," Dr. Gupta and Dr. Alan Greenbaum. (*Id.* at 1073-74). The Appeals Council noted that Drs. Gupta and Greenbaum's assessments of Plaintiff's lifting and mobility restrictions were inconsistent with the performance of sedentary work. (*Id.* at 1073). The Appeals Council rejected the ALJ's determination that Dr. Gupta's opinion was unsupported by objective medical evidence, noting that his examination of Plaintiff indicated bulging spinal discs and difficulty walking and performing certain postural movements. (*Id.* at 1074). Furthermore, the Appeals Council noted that Plaintiff's doctors had diagnosed several non-exertional limitations, such as

the inability to stoop. (*Id.*)  Finally, the Appeals Council stated that Holman's combination of exertional and non-exertional limitations necessitated the testimony of a vocational expert, per Social Security Ruling 83-14. (*Id.*).  Thus, the Appeals Council directed the ALJ to update the record with additional medical evidence, obtain the testimony of a vocational expert, and "reassess the medical opinions of [the] treating physicians . . . and indicate weight accorded these opinions." (*Id.* at 1074-75).

On remand, the ALJ conducted a new hearing by videoconference in November 2011. (*Id.* at 1171-1214).  Plaintiff described his multiple medications and medical devices, his daily activities — limited primarily to sedentary activities such as watching television, light chores around the house, and the occasional walk to the mailbox — as well as his periodic headaches and depressed mood. (*Id.* at 1178-85).  A vocational expert testified that a person who could lift a maximum of ten pounds occasionally, sit for a maximum of eight hours, stand for a maximum of two hours, walk for a maximum of one hour, had certain other postural limitations, and was limited to simple, low contact work could obtain the jobs of surveillance system monitor, addresser, and jewel stringer. (*Id.* at 1197-99).  By contrast, the vocational expert testified that a person limited to sitting for four hours each day, standing for one hour, and walking for one hour would be unemployable. (*Id.* at 1199).

On May 4, 2012, ALJ Edgell issued a new opinion, again determining that Holman was not disabled for purposes of the Act. (*Id.* at 1036-48).  In so finding, the ALJ concluded that Plaintiff retained the ability to meet the minimal requirements for walking, sitting, standing, and lifting outlined by the vocational expert. (*Id.* at 1043).  The ALJ noted that Dr. Greenbaum's more restrictive assessments of Plaintiff's ability to lift and walk were "not consistent with the minimal objective findings; such as a lack of muscle atrophy and no diagnostic evidence of any

4

radiculopathy." (*Id.*). Further, the ALJ noted that Dr. Gupta's medical records indicated that "the claimant's medical condition [had not] progressed or worsened to any degree" since he had filed his third SSDI application. (*Id.* at 1044). The ALJ further observed that "[Dr.] Gupta's relevant treatment records during this time period mention no significant clinical findings other than lumbosacral spine tenderness and pain upon lumbar range of motion." (*Id.*). Although Dr. Gupta had opined that Plaintiff could not satisfy the minimum requirements for walking or sitting, the ALJ concluded that "the doctor's impressions concerning the claimant's exertional capacity do not merit controlling weight" because they were not supported by "ample objective medical evidence." (*Id.* at 1045). The ALJ's second opinion did not explicitly refer to or evaluate the vocational expert's testimony. (*Compare id.* at 27, *with id.* at 1047). Instead, the ALJ noted that Social Security Ruling 96-9p indicates that people with postural limitations similar to Plaintiff's often can perform sedentary work. (*Id.* at 1047). Because Plaintiff retained the RFC for sedentary work, the ALJ again ruled against him. (*Id.* at 1048). Plaintiff declined the opportunity to request review by the Appeals Council and instead filed this action. (Tr. 1033-48; *see* Compl. (Docket No. 1)).

## DISCUSSION

The law governing the determination of eligibility for SSDI is well settled. A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step, sequential inquiry to determine whether an applicant has such a disability. 20 C.F.R. § 404.1520(a). The inquiry considers whether the applicant (i) is "doing substantial gainful activity"; (ii) has a "severe medically determinable physical or mental

5

impairment . . . or a combination of impairments" lasting longer than a year; (iii) has an "impairment(s) that meets or equals one of [the] listings in appendix 1 of [§ 404.1520]"; (iv) is still able to "do . . . past relevant work" depending on an "assessment of [the applicant's] residual functional capacity . . . and past relevant work"; and (v) whether the applicant can "make an adjustment to other work" depending on an "assessment of [the applicant's] residual functional capacity . . . , age, education, and work experience."  20 C.F.R. § 404.1520(a)(4).

A court may set aside a final decision by the Commissioner only if it is not supported by "substantial evidence" or if it is based on legal error.  *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010); *accord Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000).  "Substantial evidence 'is more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The ALJ must apply certain principles when weighing the evidence, including the "treating physician rule."  *See* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").  Failing to abide by an Appeals Council remand order is also grounds for a court to remand the case.  *See* 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."); *see also, e.g.*, *Mann v. Chater*, No. 95 Civ. 2997 (SS), 1997 WL 363592, at *3 (S.D.N.Y. June 30, 1997) (Sotomayor, J.).

In this case, there is no dispute concerning the ALJ's analysis in the first three steps of the required inquiry. She noted that Plaintiff had not worked since his injury, satisfying step one. (*Id.* at 1042). Next, the ALJ concluded that Holman had "severe impairments" including "mild degenerative disc disease and annular bulges of the lumbosacral spine; status-post lumbar sprain/strain; and a learning disorder." (*Id.*). And at step three, the ALJ concluded that none of those impairments qualified as a listed impairment, which would automatically qualify Plaintiff for SSDI. (*Id.*). Plaintiff contends, however, that the Commissioner erred at step four by improperly assessing him with a greater RFC than his exertional and non-exertional impairments warranted. Plaintiff argues that his RFC is less than that required even for sedentary work, relying on the assessments of two of his treating physicians. (Pl.'s Mem. Law Supp. Mot. J. Admin. R. Plead. ("Pl.'s Mem. Law") (Docket No. 11) 7-8).

More specifically, Plaintiff's principal contention concerns the ALJ's application of the treating physician rule. He argues that the ALJ erroneously, and in violation of the Appeals Council's remand order, concluded that the opinions of his treating physicians were unsupported by "ample" objective evidence. (Pl.'s Mem. Law at 8). Further, Plaintiff argues that the ALJ erred by according weight to Dr. Rocker's opinion, despite the treating physician rule and the Appeals Council's order that "vague statements" by consulting physicians could not outweigh the views of treating physicians. (*Id.* at 9). Finally, Plaintiff contends that the ALJ "must consider various factors to determine exactly how much weight to give the [treating physician's] opinion." (*Id.* (citing 20 C.F.R. § 404.1527(d)(2)). In response, the Commissioner contends that the ALJ properly considered the views of the treating physicians and "weighed all the opinions of record and reconciled the differences between them — giving weight to a portion of the assessments of plaintiff's treating physicians." (Def.'s Mem. Law at 3). Defendant further notes

that the ALJ "also properly observed that Dr. Gupta's opinion was contradicted by other evidence of record, and that the objective medical evidence in the record as a whole did not support some portions of Dr. Gupta's opinion." (*Id.*).

Although the issue is a close one, the Court concludes that the Commissioner has the better of the argument. The treating physician rule guides the Commissioner's consideration of medical evidence concerning an SSDI applicant's health status. Under the rule, the "opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). But when there are "genuine conflicts" between the treating physician's issued opinions and that of other medical experts, then the Commissioner may properly resolve the conflict. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Burgess*, 537 F.3d at 128; *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam). Contrary medical opinions offered by non-examining physicians or comprising only vague conclusions do not suffice to upset the controlling authority of a treating physician's opinion. *Burgess*, 537 F.3d 117, 128-29. If the Commissioner does not accord controlling weight to the treating physician, he or she must consider several factors in deciding what weight to grant the treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2)-(5) (including "the length of the treatment relationship," "laboratory findings," and the specialty of the doctor, among others). The Commissioner will use evidence provided by a treating physician to evaluate a claimant's medical impairments and RFC at steps two through four of the sequential inquiry; however, the Commissioner retains the discretion to make final determinations concerning a claimant's RFC,

whether a claimant's condition equals a listed condition, and how to apply vocational factors. *See* 20 C.F.R. § 404.1527(d)(2).

In light of the standard of review and the case law elaborating the treating physician rule, the Court concludes that the ALJ did not err in determining that Plaintiff had the RFC to engage in sedentary work. The ALJ credited Plaintiff's testimony and the medical evidence to the extent that she determined, in steps one through four above, that Plaintiff was incapable of resuming his prior job and that his RFC had declined. Furthermore, the Court cannot say on this record that the evidence compelled the ALJ to find an RFC lower than that required for sedentary work. Although Plaintiff is correct that the ALJ could have pointed to some elements of particular diagnoses of Drs. Gupta and Greenbaum to find an RFC inconsistent with sedentary work, both doctors also offered contrary opinions. For example, Dr. Gupta opined that Holman was not totally incapable of stooping. (Tr. 970, 1045). In addition, Dr. Greenbaum indicated that Plaintiff could sit for a maximum of eight hours. (*Id.* at 928, 1045) Given the lack of clarity from the treating physicians, the ALJ appropriately "accord[ed] greater probative weight to the opinion of Dr. Rocker, with lesser and only partial credence given to those of treating sources Greenbaum and Gupta."  (*Id.* at 1046).

Moreover, the ALJ did comply with the Appeals Council order. As noted above, the order directed the ALJ to explain the weight given to the opinions of Drs. Gupta and Greenbaum. (*Id.* at 1075). Effectively, the order directed the ALJ to explain how she had applied the treating physician rule. The ALJ did so in her second decision by "attempt[ing] to reconcile the opinions of the various treating and examining sources." (*Id.* at 1045; *see also* Def.'s Mem. Law Supp. Mot. J. Admin. R. Plead. ("Def.'s Mem. Law") (Docket No. 14) 18-19). The ALJ referred to the paucity of objective clinical data supporting the most restrictive diagnosis, as well as the

9

inconsistency between such a diagnosis and Plaintiff's daily activities.  (Tr. 1045).  Specifically, she observed that Dr. Gupta only "reported that although slightly stiff, the claimant's gait was essentially unremarkable.  While he reported some tenderness and limitation of lumbar range of motion, findings of neurologic compromise are not present.  Moreover, diagnostic and findings [sic] do not show any spinal stenosis, nerve root compromise, subluxation, or radiculopathy."  (*Id.*).  The ALJ also made certain findings favorable to Plaintiff, such as discounting the opinion of Dr. Miller as insufficiently supported.  (*Id.* at 1046).  Based on the foregoing, the Court concludes that the ALJ complied with the treating physician rule and complied with the Appeals Council order.

The Court has carefully considered the other arguments raised by Plaintiff in his memoranda of law and finds them to be without merit.  First, Plaintiff contends that the ALJ improperly evaluated his testimony concerning his pain.  (*See* Pl.'s Mem. Law 10-14; Pl.'s Mem. Law Opp'n Def.'s Mot. ("Pl.'s Mem. Law Opp'n") (Docket No. 16) 4-5; Pl.'s Reply. Mem. Law Opp'n Def.'s Mot. ("Pl.'s Reply Mem. Law") (Docket No. 19) 4-6).  Specifically, Plaintiff asserts that the ALJ improperly weighed his testimony by finding it "not credible through the use of negative inferences" drawn from the medical record, rather than "employing positive medical evidence to support her position."  (Pl.'s Mem. Law 10-12).  Plaintiff also insists that the ALJ did not "make findings regarding [his] statements or describe the factors [used to evaluate a claimant's credibility] set forth" in 20 C.F.R. § 404.1529(c)(3)(i-vii), and thus failed to properly evaluate his credibility.  (Pl.'s Reply Mem. Law at 5-6).  The ALJ, however, could and did point to negative clinical findings that undermined Plaintiff's subjective claims.  (Tr. at 1044 (noting the lack of "significant medical findings" in Dr. Gupta's treatment records and MRIs that indicated only "normal or marginal clinical orthopedic findings.")).  In addition, the law does not

require an ALJ to consider every credibility factor enumerated by 20 C.F.R. § 404.1529(c)(3), and the ALJ here considered a sufficient number of them. *See, e.g.*, *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) (summary order) ("The ALJ did not apply an incorrect legal standard when judging the credibility of [claimant's] testimony. Although the ALJ did not explicitly discuss all of the relevant factors, [claimant] has failed to point to any authority requiring him to do so.").

Next, Plaintiff contends that the ALJ's assessment of Plaintiff's RFC was "fatally flawed" on the ground that she failed to provide a "function-by-function" evaluation of Plaintiff's capabilities and failed to consider certain of Plaintiff's medical devices, such as a cane and a TENS unit (a device used to transcutaneously stimulate the nerves to provide pain relief). (Pl.'s Mem. Law 14-16). Plaintiff relies on Social Security Ruling 96-9p, 1996 WL 374185, which concerns "implications of a residual functional capacity for less than a full range of sedentary work." But that ruling indicates that "an individual who uses a medically required hand-held assistive device in one hand [e.g. a cane] may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." *Id.* at *7. Furthermore, the ALJ made the required function-by-function assessment: The ALJ weighed the medical evidence and assessed the Plaintiff's capacity to lift/carry, stand/walk, sit, stoop, crouch, crawl, and climb, as well as his manual dexterity. (Tr. 1043). And while Plaintiff notes that the ALJ did not assess his ability to push or pull (Pl.'s Mem. Law 16), nothing suggests that the jobs identified as within Plaintiff's capabilities require those functions.

Finally, Plaintiff alleges that the ALJ relied exclusively on the medical vocational grids, rather than the testimony of the vocational expert. (*Id.* at 17-23). Plaintiff correctly observes

11

that "other than to note that a [vocational expert] testified at the hearing, the ALJ makes no further mention of the [vocational expert] throughout her decision." (*Id.* at 19). It does not follow, however, that it is "as if there was no [vocational expert] testimony at all" or that the ALJ erred. (*Id.*). To be sure, it would have been preferable for the ALJ to discuss and rely expressly on the vocational expert's testimony. But such discussion is not required as a matter of law. *Cf. Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (holding that the ALJ was not required to state expressly in the decision the reasons for accepting the vocational expert's challenged testimony); *Redmond v. Astrue*, 7:07-CV-0494 (LEK/VEB), 2009 WL 2383026, at *13 (N.D.N.Y. July 30, 2009) (stating that "even though the ALJ did not principally rely upon the expert's conclusions in her decision" the fact that "a vocational expert was consulted in this case" was sufficient). Further, in the final analysis, the vocational expert's testimony is in the record and supports the ALJ's conclusion, insofar as the vocational expert testified that there were jobs available to someone with the Plaintiff's RFC.[2]

---

[2]   The Court notes that the ALJ did erroneously rely on certain factors in evaluating Plaintiff's claim. For example, to support the conclusion that Plaintiff's condition was not as severe as some opinions indicated, the ALJ noted that the "medical evidence also reflects that solely conservative treatment was undertaken . . . . The claimant was not hospitalized at any time . . . . [And the claimant's prescriptions] were generally effective, with no significant adverse side effects reported." (Tr. 1044-45). In doing so, the ALJ not only elided evidence that Plaintiff was prescribed a veritable cocktail of drugs (*id.* at 797, 1181), but also drew an improper inference from the allegedly "conservative" treatment regime, as "the opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d 117 at 129; *see also Shaw*, 221 F.3d at 134-35. Additionally, in evaluating the credibility of Plaintiff's assertions of pain, the ALJ noted that his "reported activities of daily living show that he remained quite functional through the date last insured . . . showering, grooming, and dressing [himself] . . . perform[ing] some household chores . . . [caring] for his children, attend[ing] their school-related activities and attend[ing] church services." (Tr. 1045). It is well established, however, that "'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1997). These errors — even taken together — do not call for a different result.

## CONCLUSION

The Court has carefully reviewed the entire record and finds that the ALJ's determination is free from legal error and supported by substantial evidence.  Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED, the Plaintiff's motion is DENIED, and the Complaint is dismissed in its entirety.  The Clerk of Court is directed to terminate Docket Nos. 10 and 13, and to close the case.

SO ORDERED.

Dated: March 11, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge